Columbia, et al. Mr. Fox for the appellant and Mr. McKay for the appellees. Good morning. Good morning, Your Honors. My name is Caleb Fox and I represent the appellant Barbara R. Fox. May it please the Court. Your Honors, we're here today because the District Court erroneously granted judgment on the pleadings against Mrs. Fox. We're here today  by finding that Officer Boyd was entitled to qualified immunity for his mistreatment of Mrs. Fox on December 20th, 2008. In reaching its ruling, Judge Jackson found that Officer Squire's original stop of Mr. Fox was reasonable and therefore Officer Boyd's subsequent treatment of Mrs. Fox was also reasonable. However, the District Court erred in overlooking certain key facts, particularly the fact that Officer Squire's had more than 15 minutes while Mr. Fox was waiting on the sidewalk to issue Mr. Fox a parking ticket. I assume all that's correct in reference to her claim. What is it that the officer did that is so clearly a violation of her constitutional rights that there isn't a qualified immunity? Your Honor, Officer Boyd, in ordering Mrs. Fox to get out of the vehicle and place her hands on the hood of the car was a clear violation of her Fourth Amendment right against illegal seizure. There was a scene that perhaps began unwisely on the officer's part, but by this time he has a person that he is having a custodial-type confrontation with her husband, and she's making a fuss in the car. Can't the officer ask the passenger or tell the passenger to get out? No, Your Honor, not if the original stop was unconstitutional. The original stop has already occurred. The officer has what he has at this point. That doesn't taint her being different than that on the rest of his life. I mean, something has to be her right has to be violated in any way that is a clear violation of constitutional rights to survive That's right, Your Honor, and in this case... He ordered her out of the car, ordered her to place her hands on the hood of the car in violation... Not during an unlawful arrest, Your Honor. If the original stop is unreasonable, then any subsequent actions that an officer may take to secure a scene is also unreasonable. Once the officer has the scene, it has to be secured, then, however it got created. I respectfully disagree, Your Honor, if the original stop is unreasonable, that does not then allow a police officer to violate anybody's rights. But she was sitting there with a gun in her lap. She was not, Your Honor. She didn't let her put the gun down? But there was no... I'm not asking you what there was. I'm saying suppose there was a gun in her lap. Well, yes, Your Honor, but I think that's factually very different from the case at hand. No doubt it's very different. That's what we call a hypothetical. Yes, sir. But if you're saying that it taints everything after the original stop, that nothing he does after that can be reasonable, wouldn't it cover that hypothetical? I believe that the facts in that hypothetical are so different from the facts in the case here that it's not particularly applicable. So clearly different? In what legal way? Well... Would it make a difference in the qualified immunity case? Well, the officer, Officer Boyd, pulled Mrs. Fox out of the car in order to place her hands on the hood of the car without any evidence in the pleaded facts that suggests that Mrs. Fox was a security risk to any of the officers on the scene. Simply, Mrs. Fox was asking questions about why her husband was being unlawfully arrested and the officers rudely threatened to arrest her and forced her to place her hands on the hood of the car and get out of the car in violation of her rights. So it's your point that the arrest was clearly unconstitutional? Yes, ma'am. And so the normal powers that police officers enjoy in executing arrests don't apply when the arrest itself is clearly unconstitutional? That's right. When the arrest is not supported by probable cause or reasonable suspicion, then the subsequent treatment, in this case the seizure of Mrs. Fox and the seizure of Mr. Fox, were also unconstitutional. Is there... Go ahead. Mr. Fox's case was not before? Yes, Your Honor. That's over, right? Yes, sir. There was a judgment entered against the government for $80,000. Was the government... Just a quick question about that judgment process. Was the government a party to that application? Did they file anything? The judgment was offered by the government to Mr. Fox, and he accepted it. I'm sorry. It's my confusion. The exoneration proceeding or whatever it was called where they found that he was clearly innocent of disorderly conduct? That's right. The government did not oppose Mr. Fox and those proceedings. Was the government a party to that proceeding? It wasn't just an ex-party. I'm sure it was. It was a settlement, right? No, there were two things. Yeah. No, there were two. This is separate from the settlement. This was... You're talking about the expungement. He was exonerated of his disorderly conduct. Right. The government, to my knowledge, did not oppose it. I believe that they were entitled to oppose it and did not oppose it at that time. Did they file anything in that that you know of? I'm honestly not sure whether they did or not, but I don't believe they opposed it. I don't believe they consented to it either, but I don't think they filed any papers that, you know, presented arguments as to why his arrest should not be expunged. So the government's argument is first that Mr. Fox was illegally parked. Yes. And he asked to speak to a supervisor. Yes, Your Honor. So at that point, are you contesting that there was a traffic violation? Not necessarily, Your Honor. All right. So there was a traffic violation. Then Officer Boyd joined Officer Squires. Correct. After Officer Squires stopped Mr. Fox from leaving, yes. In a hypothetical situation, if once Mr. Boyd and whoever the other supervisor. Squires? No, Squires was just a police officer. Right, the supervisor. Boyd was just a police officer, but there was a supervisor on the scene. Eventually a supervisor arrived. He came with Boyd, or around the same time? Yes, ma'am. In any event, since there had been a traffic violation, the officer could have issued the citation. And if Mrs. Fox had continued to question, is it your position that then the officer would not have had, under a Supreme Court precedent that you cite, the authority to ask her to get out of the car? Well, I think under that hypothetical, the officer would have that authority. But I think that hypothetical does not take into account Officer Squires' lack of diligence in not issuing the ticket in the ample time he had. Well, Mr. Fox had asked to see a supervisor, speak to a supervisor. Yes, Your Honor. Presumably, I mean, this is speculation on my part, the supervisor might have said to Squires, let it go. All right, so they were waiting to see what was going to happen. That's right. But Mr. Fox then elected to leave, and Officer Squires stopped him from doing that, in contravention of his order to move the car in the first place. Right. So, I just need to be clear here. There's a clear parking violation under the traffic laws. I think that's true, yes. All right. And according to the findings that we have, Mrs. Fox kept asking Boyd what was going on with regard to her husband. That's right, because they were... Part of your argument is Boyd created the tension in Mrs. Fox. Yes. That created the whole situation that caused him to ask her to get out of the car. That's correct. His rude treatment of her while she was asking questions as to why her husband was being unlawfully arrested certainly contributed and was... Well, she asked what was going on. Isn't that right? What are you doing to my husband? She initially tried to get out of the car. But did she challenge whether the arrest was lawful? She was not even able to do that because every time she asked a question, she was told to shut up. I understand, but she wasn't asking why her husband was being illegally arrested. She was just asking what were they doing. Correct? Well, the actual only words that she was able to ask was, yes, what is going on? So the district court took the position that because there was evidence that Mrs. Fox had become emotional, that in order to allow the processing of Mr. Fox to continue without any further interruption, that that was a reasonable direction for Mrs. Fox to get out of the car. That's what the district court found, yes. And you don't disagree with any of those factual findings? No, we don't. And that it was a minor intrusion to order her to put her hands on the car? Certainly a minor intrusion as compared to other illegal seizures, yes. But an intrusion, regardless of its level, is unconstitutional regardless of how severe the intrusion may be. This is a fruit of the poisonous tree argument you're making almost, right? Which I didn't see in your brief in quite those terms, but let's ignore that for a moment. So your point here is that it is clearly established that an officer, where there has been a violation of the traffic laws, and a passenger, from the officer's point of view, has created a situation where the officer determines he should tell her to get out of the car and put her hands on the car. And it's clearly established that that was a violation of her constitutional rights under the Fourth Amendment? Yes, Your Honor. And in what case can we look to for that? I think Sharpe is the most important case. Sharpe? Yes, United States v. Sharpe, which addresses the need for an officer to diligently pursue his investigations during an investigatory or traffic stop, which officer squires did not do. That's the argument that the government said you didn't raise in your opening brief, and now you raise it in your reply brief. And you say, well, you cited cases in your opening brief, but you really didn't make this argument. But let's assume that's not a problem. Mr. Fox asked to speak to a supervisor. Yes. So isn't the delay explained by that? Well, it's partially explained by that, but I think Officer Squires' subsequent conduct in refusing to allow Mr. Fox to comply with his original order to move the car and to hold him there for no reason other than to harass him strongly suggests that Officer Squires had no intention of issuing a parking ticket, and certainly the 15-minute time window that he had gave him ample time to issue a parking ticket and resolve the situation. Well, I know you have this abandonment argument, but I don't know. I understand your argument about he couldn't both stand on the sidewalk and move the car. Yes. But I don't know where this abandonment comes from. Well, the order to move the car was rescinded by Officer Squires when he instructed Mr. Fox to stand on the sidewalk and wait. He couldn't move the car and stand. He didn't say. I guess my scenario, as I read the facts here, is that Mr. Fox wanted to speak to a supervisor. Yes. And they were waiting for the supervisor to get there. And then when Mr. Fox tried to leave, Squires told him to stop. Right, which there's no – we cannot find any legally justifiable reason for that. There's no – to our knowledge, there's nothing in the police handbook that says once a citizen requests to speak to a supervising officer, he or she has to remain there until that officer arrives. And the fact that Officer Squires – Well, I mean, that's a matter more for internal police politics. That doesn't rise to a constitutional level. Hang on. Do we know – I mean, this is a dismissal on the pleadings. Do we know – is it in your complaint that Officer Squires actually asked for a supervisor? Because it seems like instead of a supervisor, a swarm of police officers showed up. That's correct. And all I read was that someone said you wanted an official. I'm an official. I didn't see any complaint that said he called for a supervisor, actually called for a supervisor, or that a supervisor actually showed up. Well, that is correct, Your Honor. The only – after Mr. Fox was placed in handcuffs, a police officer did arrive and claimed to be an official. Well, they're all officials. That's right, but then said that I guess it's too late because Mr. Fox had already been unlawfully arrested. Certainly there's a question of facts on that as to whether or not Officer Squires – That's what I was curious about. It seems like there's a lot of – at least on a constitutional question, a lot of facts missing as to what Officer Squires did, why. If a police officer asks for a supervisor at a traffic stop, a swarm of other police officers show up, and no one's ever even identified as a supervisor in this record. That's right. Do we know how much time elapsed from the very beginning of this whole incident until the very end when Ms. Fox left? The pleaded facts say there was at least 15 minutes while Mr. Fox waited on the sidewalk. There is no specific time noted in the complaint that says how long after Officer Squires subsequently stopped Mr. Fox from leaving, the other officers arrived. You know, this case is kind of unique, Your Honors, in that because Mr. Fox's case went forward, there has been discovery developed in this case. But that's not in this record. But not in this record. That's right. So Mr. McKay and I both know sort of what the timing was. But as far as what the district court knew under the pleaded facts, it's fairly unclear, and there's certainly a question of fact that should have been viewed in a light more favorable to Mrs. Fox than to Officer Boyd. I take it on the pleadings here, we also – there's no evidence that Squires ever did a single step in the course of issuing a parking citation until – I guess there's some debate about whether it was before or after at the police station. But, you know, between the initial move of the car and putting on the handcuffs, I take it there's at least no assertion in your complaint of any – or their answer of any – anything he did to initiate a traffic citation? That's correct, Your Honor. There was no mention of a parking citation apart from the original dispute over the meaning of the parking signs. And certainly Mr. Fox did not receive a parking ticket on the scene. He received the parking ticket later after. And something can start as a lawful traffic stop and then, by the nature of its term, it's turned into an unconstitutional stop. I'm not saying that's what happened here, but that could certainly happen in the law. That's pretty well established. Yes, absolutely. All right.  Thank you very much, Your Honor. May it please the Court. I'm James McKay and I represent Officer Boyd. Let me just say this. Officer Boyd's intention was a very minor intrusion. He did not have any physical contact with her. I'm sorry. Did you say his intention? His actions, contact toward Mrs. Fox was a minor intrusion. He did not pull her out of the car. He did not touch her. He did not have any physical contact. Right, but he had no authority to do anything. I'm just asking the question. If he had no authority, an officer could come up to me driving into work and say, get out of the car and put your hands on the hood. And that would be just as factually minor. But if they had absolutely no authority whatsoever to order me to do that, that would be unconstitutional, right? Yes, Your Honor. So really this turns on the question of what constitutional authority, if any, he had. Well, two things. First, was there constitutional authority and was there separately, was it clearly established that he lacked constitutional authority, right? Yes, Your Honor. It has to be judged from the perspective of a reasonable officer in Officer Boyd's position. He came after this incident with Officer Squires was over, and he basically had the authority to, a reasonable officer would have come and realized that there was an illegally parked car in violation of the district's traffic regulations. Well, how do we know that? Because I know originally he'd been by the sign, but then he started to pull away at some point before Officer Boyd showed up? Yes. And then was stopped again. But we don't know anything in this record, at least, where the car was at that point, do we? Well, Officer Boyd clearly came after the car was stopped. So the car was stopped. But we don't know where the car was stopped the second time, right? I don't think it moved. Well, the complaint says that he started to pull away. Now, I don't know whether that means an inch or a few feet or a couple yards or what other signs were on the street. It could very well be right. I'm just saying we've got a decision here on the pleadings. So where do the pleadings tell us where the car was? Well, there's no indication that he moved the car. He started to go away, but he was stopped. And there's no indication that it was not illegally parked. Well, there's no indication one way or another after. I think we know from the complaint when Officer Squires made the stop he was parked somewhere in that area where there was the debated no parking but didn't say standing sign. And then we don't know from this record exactly where he was and then how much the car. I'm just asking you a question. Your Honor, the complaint makes it clear that to one side there was no parking at any time. The other side there was no parking, commercial vehicles only, and he was during an hour where that was prohibited. So it's clear from the complaint that he hasn't moved it out into a legal parking place. Where is it clear from that? Because the description of the place where he originally parked was no parking either way. Well, did it say how long the no parking? I mean, there's plenty of city blocks where there's, you know, you're shaking your head. I'm just telling you this is a fact question. Well, it is. There's plenty of city blocks where there's a portion of it that you can't park, and then right next to it is the parking areas. Well, that's the one. That's commonly loading zones. There's no indication. It was very clear from the complaint that there was no parking either way. There was no indication at the complaint there was any place he could have parked legally. There was, it was purely one way, there was no parking at any time. The other place was no parking except commercial vehicles, and that's where he was parked. For the entire block? I didn't read that from the complaint. I mean, I thought there was an area outside the CVS or whatever it was. Right. Did it say what the distance of the no parking restrictions was? Well, the complaint said there was no parking, I think it was to the east there was no parking at any time, and to the west there was no parking except commercial vehicles. And that was the complaint. I think we're going in circles here. What I'm asking is do we know what the length of those parking restrictions were? And I guess we don't on the record. You mean the temporal length? Not the temporal. No, no, the geographic. Was it the entire? We don't know, right? Well, it was the entire area in front of him on that side of the street as far as we know from the complaint. In any case, it's Officer Boyd you have to look at. He came to the scene, and he had no basis to second guess Officer Squire's determination that he was illegally parked and that he was given a citation, which happened right on the scene if you look at paragraph 48, 49 of the complaint. He was given a ‑‑ for one thing, I just wanted to point out that ‑‑ I'm sorry, hang on, I just want to understand what you're saying. Two things I just want to mention about the complaint. One is paragraphs 31, 32 on page 8. Let's be clear, 48 and 49 don't tell us time. No. And what we're really been talking about is paragraphs 31 through 33. Yeah, 31. Mr. Fox is incredulous, and he stood there for 15 minutes. Well, then he asked for a supervisor, and the officer said, yeah, wait for a supervisor. At this point, though, he's voluntarily standing on the sidewalk waiting for his wife, who was in the store at the time, to come out. I don't see all that. What I see is paragraph 33. Yes. All right, and the inference to be drawn there is that Mr. Fox had gotten back into his car, and it says, quote, so he got back into his vehicle to start it to leave. However, officer Squires activated his siren, and Mr. Fox stopped. Yes. Then Mr. Fox got out and walked to Squires' vehicle. Yes. All right. So there are several inferences that can be drawn, and you heard counsel say Mrs. Fox is entitled to a reasonable inference. I'm sorry, I just couldn't hear you. You couldn't hear me? No, I'm sorry. I'm sorry. That you heard counsel for Mrs. Fox say that the inferences should be drawn in Mrs. Fox's favor here. Well, it has to be plausible, though. You have to have a plausible basis for liability, and you just can't say it's merely possible, and that's all it says here. You have no plausible under the Bill Twombly cases. You just haven't met that threshold standard with this pleading of showing that you have a good case of the clearly established violation. And we cited a number of circuit decisions before that say parking offenses justifies a terrorist stop. The third circuit case saying that… No, but every one of those says a lawful traffic stop or a lawful arrest allows you to control the scene during the arrest. A lawful traffic stop allows you to order people out of the car. And so if it was unlawful, then there would be a Fourth Amendment violation. Now, then you have to ask the separate question, was it clearly unlawful or so clearly that we would get past qualified immunity? But I want to make sure we're being very careful here because I think some of the briefings seem to assume that as long as there's a traffic stop at some point, officers can do whatever they want and order people in and out, in and out, in and out, which I don't think is the law at all under the Fourth Amendment. Well, Your Honor, right, but there has to be a lawful traffic stop. But here there was – I think there's really no dispute anymore that he was parked in violation of the traffic regulations. Now, this Court has not directly decided whether a parking violation justifies a traffic stop, but there's no other case in the circuit, any of the circuits, to the contrary. And you can't just say generally – cite general statements about the Fourth Amendment. The Supreme Court in the Ashcroft v. Al-Kid made it clear that you have to show the particular conduct of the officer who violates the right to show the clearly established element. And the burden is on the plaintiff to show that a clearly established right was violated by allegations that are plausible, that we could plausibly conclude established a Fourth Amendment right, and it certainly doesn't happen here. Pardon me? I understand those legal standards, but the Supreme Court has made it very clear that you have to apply them in a specific factual context. Yes. So we're looking at the complaint, and what it says is that Mrs. Fox complied with every instruction she was given, and that all Officer Boyd knew when he got to the scene was that Squires said Mr. Fox had an attitude problem. Yes. So then Mrs. Fox asked Officer Boyd what's happening, and he tells her to shut up and threatens her with arrest. Well, he didn't arrest her. No, but he threatens her. Yes, Your Honor, that was not probably the best way to handle it, I agree. Not probably the best? No. I assumed you would have stronger language on that. No one covered themselves with glory in this strike. No, I'm trying to get to the facts of this case, all right? Judge Millett's questions were getting to are there a lot of factual issues that need to be resolved as opposed to a judgment on the pleadings. So if we're talking about what a reasonable officer did, and we're only looking at the complaint, was it reasonable for this officer to proceed as he did? And are the facts of this complaint under Twombly and Ickle to be viewed favorably to Mrs. Fox? That's my question. Yes, Your Honor, that is the question. And as we've stated, the allegations of complaint do not establish plausibly that Officer Boyd violated clearly established rights of Mrs. Fox. In the very minor intrusion, no physical conduct, just get out of your car, put your hands in the hoods where I can see them. I mean, look at the Maryland v. Wilson case. I mean, in that case, the only reason the officer had was, well, the passenger looked nervous, and that was enough to justify it. Yeah, but the difference here is Maryland said you can order someone who's already in out. But here the police had already ordered her in and then ordered her out. First they ordered her in. Yes. So they did their Maryland v. Wilson, ordered her in the car. And then because she was crying and asking questions according to the complaint, they ordered her back out. Now, I assume your position isn't that Maryland v. Wilson allows police officers to treat people like jack-in-the-box and order them in, out, in, out. At some point he's exercising control over her that's way beyond simply a Maryland v. Wilson one-time exit for safety. Well, Your Honor, we agree there have to be constraints on police officers. But here there are very articulable facts that the police officer was confronted. He was trying to control the scene. That's what he wanted to do. From the allegations of the complaint, was he there when she was ordered into the vehicle? The sergeant was there at that point. Well, yes. He was there when she was ordered into the vehicle? Yes. They're both police officers, all right? There's no supervisor on the scene. Well, he described as sergeant. No, but there's a footnote. No, he wasn't a sergeant. There's a footnote saying that was a mistake. I don't read footnotes. Yeah. Yeah, everybody, you know, realizes he's an officer, not a sergeant. And they both were participating in the arrest, Spires and Boyd, of Mr. Fox and allegation of the complaint number 22. And the officer, Boyd, was trying to control the scene. She, four times, asked what was happening. Well, the point is, though, reading the complaint, the scene was under control until Officer Boyd's conduct created the problem. That's the inference from the complaint. Well, I don't think the complaint shows that because she had gotten out of the car and the officer, Boyd, said, please get back in the car or get back in the car. I don't know how he said it, but she got back. There was no keys. I'm just going to stipulate that. And then, you know, he did tell her to shut up, which was not a good thing for a police officer to tell a citizen. I agree. And then she started crying. And here he is trying to assist Officer Spires in arresting Mr. Fox. I think that's your issue, OK? The traffic stop stuff, let's assume that's all at least within the bounds of not clearly unconstitutional. But the order out was in conjunction with what I hope you will admit was a clearly unconstitutional arrest. Not a seizure, but it was part of a clearly unconstitutional arrest of Mr. Fox. No, I think it was perfectly constitutional. A perfectly constitutional arrest of Mr. Fox. Yes. What was he doing? He failed to obey the reasonable instruction of Officer Spires to move his car. That is a cruel offense. I'm sorry, Mr. Spires told him, asked him to move it. He went back and he said, stand on the sidewalk. And then when he got in the car to move it, Officer Spires said, stop. You can't mean when you've got three different directions from a police officer that you get to be arrested for choosing to do the last two things he said you could do? Well, Officer Boyd came to the scene after it had happened, and the failure to obey had already occurred. That was an offense that had been established. You don't really need to get to the legality of Mr. Fox's arrest. He tried to move the car and was told to stop. Did he obey that? Well, he did obey that, yes. He said, wait on the sidewalk. Did he obey that? He did. Yes, he did. Okay, so what basis did Officer Boyd have to think there was any reason to arrest him for failing to obey an order? He failed to obey the initial order to move his car. Boyd wasn't there for the initial order to move the car. Boyd wasn't there when the initial order to move the car occurred. And Boyd, under collective knowledge, is charged with knowledge that Spires made two subsequent orders that told him to not move the car and to stay on the sidewalk. You can't really seriously mean that. Yes, I – well, the recent case in the Supreme Court in Miami, I guess, North Carolina, establishes that there could be a mistake about the law. But nevertheless, if it's a reasonable mistake, then it's still a constitutional error. I'm sorry, where did your answer allege a reasonable mistake of law for qualified immunity? Well, it's a recent case. I did inform counsel that we might mention it. I'm aware of the Hine case. Well, I'm not sure why – I wonder if that helps you when you have Officer Spires making two subsequent orders that were completely obeyed and you couldn't – and forbidding him to comply with the first order. What is the basis for the arrest? Well, Your Honor, the violation had occurred and, you know, whether or not it was – you know, you take away the violation, that's an interesting question. But the point is that Officer Boyd didn't – I'm sorry, take away the violation. He had no – what basis – what reasonable basis did Officer Boyd have to think that he could arrest Mr. Foxx at the time he arrested him? Well, Your Honor, the – I think the reasonable basis is a failure to obey a reasonable order of Officer Spires. But you don't really need to get into the legality department. Without him ever having heard that order? He never heard any order? Well, under the collective knowledge doctrine, you have to get to the point that Officer Boyd should have realized that Officer Spires ordered Mr. Foxx to move his car. Mr. Foxx refused. That was the whole reason why Mr. Foxx asked for Officer Spires to call the supervisor, because he thought wrongly that he wasn't a legally part. And – but you don't have to get into the legality of Mr. Foxx's arrest. It's enough from the point of view of Officer Boyd, who came to the scene after all this had happened, that he had no reason to second-guess Officer Spires' decision that there was probable cause to arrest Mr. Foxx. Arrest? Wait. Officer Spires never thought there was probable cause to arrest for a civil parking violation. No, he wasn't arrested for a civil parking violation. Now, it's true he was arrested for disorderly conduct, but we mentioned in our, you know, pleading judgment of the pleadings that there was a perfectly valid ground for Officer Spires to arrest a failure to disobey order of a police officer. But you don't have to get to the legality of Mr. Foxx's arrest, because Ms. Foxx has not shown that any clearly established right was violated by Officer Boyd's very minimal intrusion in this case. Now, if I – so let me just be clear. Here's my one question, and then – Yeah. If we were to determine that the arrest was clearly unconstitutional – It wouldn't make a difference. He was still – Isn't it pretty well established that if – that you don't have authority to haul others out and put them against a car or against a wall if the arrest itself is unconstitutional? Your authority to control the scene for an arrest is for a lawful arrest under Supreme Court precedent. Yes, but the question is whether a reasonable officer in the position of Officer Boyd would have – could have reasonably believed that Mr. Foxx was properly detained. Clearly, his car was parked in violation of traffic regulations. That's not clear from the complaint either. Well, it's – you know, I read the complaint that it's – you cannot possibly suggest any other scenario that, you know, he moved it to a perfectly fine place, because I don't think there is anything around there in any case. Well, you're saying you think, but you don't. No, no, the complaint does not plausibly suggest anything. It – it – it plausibly suggests that he was stopped right in his tracks when he tried to – he turned his engine on, and the – I think it's – So you agree that there was a lot of inferences from the complaint, correct? Well, but it's her burden of showing – So that's why I asked you, on a 1983, is Mrs. Foxx entitled to the reasonable inferences? Is she entitled to what? Is she entitled to the reasonable inferences from the complaint? Well, yes, but she has a burden of – I understand, but we're – I'm still backing the facts, all right? I think, you know – I don't think we're disagreeing, candidly, on these legal principles that the Supreme Court has established. We're just trying to find out if they are applicable under these facts. Well, the – And isn't that the critical issue here? The – Is this an appropriate case for judgment on the pleadings? Well, she has the burden of producing a complaint that plausibly suggests that Officer Boyd violated her clearly established constitutional rights. That is her burden. Right, so she's arguing that she was asking a legitimate question. She got no answer. She got an abrupt statement to shut up. Yes. And she was told, or she'd be arrested. Yes. She started to cry. And he told her to get out of the car and put her hands on the roof. Yes. That's her situation. That's – but we believe that under the circumstances – And we don't know, from this complaint, exactly what Officer Boyd knew when he arrived on the scene, other than that Squires told him Mr. Fox had an attitude problem. And at that point, he puts Mr. Fox in handcuffs. Well, a reasonable officer coming to the scene like Officer Boyd would have realized that there was a traffic violation and – Maybe he would have. Maybe he wouldn't. It's just not in the complaint. Well, you have to assume that the officer has his eyes open and he – You answer my question about who gets the reasonable inferences here. Well, she has the burden, under Iqbal Chowdhury, of putting forth a plausible set of facts in her allegations that would allow – Reasonably viewed from her perspective. Yes. You agree with that? I just couldn't hear you. Reasonably viewed from her perspective, correct? Yes. All right. And you've been citing a lot of authority for these arrest cases where it's the reasonable officer. And I'm just trying to see how these two lines of authority come together. Well, qualifying the intercourse is judged from the point of view of a reasonable officer. I mean, motive has motivation. I think Mrs. Fox spent a lot of time about the motives of Officer Squire, but those are really irrelevant. The question is whether a reasonable officer in Officer Boyd's position coming to the scene would have violated her clearly established constitutional rights with a very minimal intrusion. There was no physical contact. He didn't even ask for identification. He said, get out of the car and put your hands on the hood so I can see them. I think we've cited a Third Circuit case where an officer had a passenger put his hands up in the air, and that was perfectly okay under the Third Circuit. Now, again, against all these cases we cite, there's not a single case cited by Mrs. Fox for the clearly established rights. Her opening brief doesn't mention it at all, and I think you can't raise arguments for the first time with a reply brief. In any way, if you look at a reply brief, all she talks is in generalities. There's no specific case dealing with the particular type of conduct that Officer Boyd engaged in in his very temporary detention of Mrs. Fox. It's given the obligation of Mrs. Fox to state a complaint that plausibly gives you a basis for inferring that clearly established constitutional rights were violated. It just isn't here. During the entire proceeding, including the reply brief, she hasn't cited a single case that has anything close to the facts of this case. We believe that the District Court correctly held that Mrs. Fox failed to prove that Officer Boyd violated her clearly established constitutional rights, and that the court should be affirmed. Thank you. Thank you very much, Your Honor. Counsel for Appellant, do you want a minute or so? Thank you, Your Honor. I'd just like to address the failure to comply argument that Counsel made. First of all, it's worth noting that the defendants in this case made this point before Judge Jackson. I'm not sure what you're addressing exactly. I'm sorry. Counsel argued that the officers had a constitutional arrest under failure to comply with the lawful order of a police officer. I misunderstood what you said. Yes, sir. And the defendants reached this point or made this point in their judgment on the pleadings papers, and Judge Jackson, if you look at the appendix, pages 101 to 102, addressed those and in summary basically said there's not enough facts in the pleadings to reach a disposition on that point, and so therefore it's not appropriate to grant that motion on that point now until further factual development has been made through discovery. So now that Officer Boyd is asking this court to reach a decision on the merits of that argument when the finder of facts found that there were insufficient facts to do so, and I think that's improper and certainly a good reason why this court should remand the case to the district court for further factual development. All right. Thank you. We'll take the case under advisement.
judges: Rogers, Millett, Sentelle